UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FSC FRANCHISE CO., LLC,

     Plaintiff,

v.                                                    CASE No.  8:09-CV-454-T-23TGW

EXPRESS CORPORATE
APPAREL. LLC, et al.,

     Defendants.

_____

## REPORT AND RECOMMENDATION

Plaintiff FSC Franchise Co., LLC, the franchisor of Beef O'
Brady's Family Sports Pubs, granted a license to defendant Express Corporate
Apparel. LLC, to supply corporate apparel and merchandise.  The parties'
Supplier Trademark License Agreement authorized a nonexclusive royalty-
free license to produce uniforms, clothing, and retail items bearing the
plaintiff's marks for purchase by the plaintiff's franchisees.  The agreement
was terminated by the plaintiff pursuant to a termination letter, effective
December 31, 2008.

The plaintiff alleges that, despite the termination, the defendants
continued to operate as if they were an approved licensee of the Beef O'

Brady marks. As a result, the plaintiff has moved for the entry of a preliminary injunction to stop Express Corporate Apparel, LLC, and Richard Donahue, its owner, from continuing to use its trademarks in violation of the Lanham Act. The defendants have filed no opposition to the plaintiff's motion. Accordingly, I recommend that the Motion for Preliminary Injunction (Doc. 13) be granted against the defendants.

I.

Plaintiff FSC Franchise Company, LLC ("FSC"), is a Delaware limited liability company that franchises Beef O' Brady's Family Sports Pubs restaurants (Doc. 1, ¶ 1). The business provides food and beverage service to restaurant patrons in a family-oriented atmosphere (id.). The plaintiff owns the marks "Beef 'O' Brady's," which is registered as a trademark, design mark, and state registered mark, and "Beef's," "A League of Its Own," and "O'Brady's" which are registered trademarks (id., ¶ 6). It uses them to identify its restaurants and for promotion and advertising (Doc. 13, p. 2).

Defendant Express Corporate Apparel, LLC ("Express"), is a Florida limited liability company in the business of producing corporate apparel and merchandise (Doc. 1, ¶ 2; Doc. 13, p. 3). The owner and

president of Express, defendant Richard Donahue, signed the parties' Supplier Trademark License Agreement to become a nonexclusive royalty-free licensee to produce uniforms, clothing, and retail items bearing the marks for FSC's franchisees to purchase (Doc. 1, ¶ 3; Doc. 13, p. 3).

In or around 1996, Donahue and the founder of the Beef O' Brady's chain allegedly agreed by handshake that Express would supply, exclusively, apparel and souvenirs for the restaurants (Doc. 16, ¶¶ 44, 45). The parties' informal agreement continued though February 2008 when FSC, after soliciting bids from alternative corporate apparel companies to secure lower prices for its franchises, awarded a primary license to Madden Corporate Services, Inc. (Doc. 13, p. 3). Express continued as a secondary vendor pursuant to the Supplier Trademark License Agreement, signed by Donahue on February 15, 2008 (id.).

In the agreement, Express agreed, among other things, to acknowledge ownership of the marks in FSC (Doc. 1, Ex. 1, ¶ 2). Moreover, either party could terminate the agreement with, or without, cause upon thirty days notice to the other party (id., ¶ 8). Following termination, the contract provided that the licensee had to discontinue the use of the marks, but had the right to sell remaining inventory within sixty days (id., ¶ 9).

-3-

FSC notified Express of its decision to terminate the agreement by letter dated November 24, 2008, to be effective on December 31, 2008 (Doc. 1, Ex. 2). In the termination letter, FSC reminded Express and Donahue of their agreement to comply with the post-termination provisions imposed by the agreement (id.). The letter emphasized that, in the event of termination, the right to use the marks ceased immediately (id.).

The plaintiff subsequently learned that several provisions of the agreement were being violated (Doc. 13, pp. 4-5). Thus, in February 2009, Donahue contacted Daniel Robillard, the general manager of a Florida Beef O' Brady's franchise, to solicit the sale of merchandise bearing the marks, cautioning Robillard not to reveal their conversation to FSC (id., p. 5). Further, Donahue contacted Richard Cleaves, a Kentucky franchisee, and informed him that Express would continue to fill orders for merchandise bearing the marks (id.). Additionally, FSC learned that, in February 2009, the defendants filled orders for merchandise bearing the marks (id.)

Express also continued to represent to the public that it was affiliated with FSC. Through at least March 6, 2009, the defendants' website marketed the company as an approved licensee of the various Beef O'

-4-

Brady's marks and utilized the marks as graphics and as metadata (Doc. 1, Ex. 3; Doc. 13, p. 4).

Consequently, the plaintiff filed this lawsuit on March 12, 2009, asserting claims against the defendants for trademark infringement, breach of contract, and false designation of origin under the Lanham Act (Doc. 1). The plaintiff moved for a preliminary injunction seeking to prohibit the defendants from using the marks (Doc. 13). The motion for a preliminary injunction was referred to me for a report and recommendation (Doc. 15). Although the defendants have filed an answer and counterclaims, they have not responded to the motion for a preliminary injunction.

## II.

A preliminary injunction may be issued when necessary "to protect the plaintiff from irreparable injury and to preserve the district court's power to render a meaningful decision after a trial on the merits." Canal Authority of State of Florida v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974). The remedy, however, is considered extraordinary and drastic. It may be granted only if the plaintiff clearly shows (1) a substantial likelihood that it will prevail on the merits; (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted; (3) that its threatened injury outweighs

the threatened harm the injunction may cause the opposing party; and (4) that granting the injunction will not disserve the public interest. Davidoff & CIE, S.A. v. PLD Intern. Corp., 263 F.3d 1297, 1300 (11th Cir. 2001). It is well established in this circuit that "a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the 'burden of persuasion' as to all four elements." Id. (quoting Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000)(en banc)).

### III.

The traditional four factors that are considered in connection with a motion for a preliminary injunction apply as well to trademark cases. E. Remy Martin & Co., S.A. v. Shaw-Ross Intern. Imports, Inc., 756 F.2d 1525, 1530 n.13 (11th Cir. 1985). An evaluation of the evidence presented by the plaintiff shows that the plaintiff made a strong showing of those four factors in its motion for preliminary injunction and its accompanying memorandum and materials. The defendants did not respond despite being given ample time to controvert the motion. Thus, the defendants have not submitted any "counter or opposing affidavits, and a responsive brief," as contemplated by Local Rule 4.06(b)(3). In light of this failure, and Local Rule 3.01(b), the defendants have implicitly consented to the entry of a

-6-

preliminary injunction.  Under the circumstances, I have not conducted a hearing, although normally I would have done so; the defendants have not raised any issue with respect to the motion for preliminary injunction that warrants a hearing.

Furthermore, the defendants' failure to contest the motion forfeits any entitlement to notice pursuant to Rule 65(a)(1), F.R.Civ.P., before the issuance of a preliminary injunction.  In all events, this report and recommendation constitutes such notice.

Consequently, in light of the defendants' lack of opposition, it is enough to determine whether the plaintiff has made an adequate showing to justify the issuance of a preliminary injunction.  The plaintiff has amply done so.  Accordingly, I recommend that the motion for preliminary injunction be granted.

A.  <u>Likelihood of Success on the Merits</u>

As indicated, the plaintiff alleges that the defendants' use of various marks related to the Beef O' Brady's franchise constitutes trademark infringement and unfair competition and false designation of origin in violation of 15 U.S.C. 1114-18 and § 43(a) of the Lanham Act (Doc. 1, ¶¶ 16, 28).  In order to prevail on a claim of trademark infringement in this case, the

-7-

plaintiff must establish: (1) that it possessed a valid mark, (2) that the defendants used the mark, (3) that the defendants' use of the mark occurred "in commerce," (4) that the defendants used the mark "in connection with the sale ... or advertising of any goods," and (5) that the defendants used the mark in a manner likely to confuse consumers. See North American Medical Corp. v. Axiom Worldwide Inc., 522 F.3d 1211, 1218 (11th Cir. 2008).

The plaintiff has established that it possesses valid marks by identifying the registration numbers of each mark and providing documentation (see Doc. 13-2, Ex. B). Thus, the plaintiff cited the registration numbers and attached copies of the marks from the U.S. Patent and Trade Office's website. That evidence is sufficient to show plaintiff owned the marks, as registration is prima facie evidence of registrant's ownership and exclusive right to use the mark. American Heritage Life Ins. Co. v. Heritage Life Ins. Co., 494 F.2d 3, 10 (5th Cir. 1974); 15 U.S.C. 1115(a).

Moreover, FSC's rights to the protected marks are not restricted to food and beverage service and seemingly extend to other areas, such as apparel and merchandise to promote its food and beverage franchises. "The protection afforded a trademark owner is not limited to the goods on which he is using the mark, but, rather extends to any goods on which the use of the

-8-

offending mark is likely to cause confusion." Kentucky Fried Chicken Corporation v. Diversified Packaging Corporation, 376 F.Supp. 1136, 1140-41 (S.D. Fla. 1974), affirmed, 549 F.2d 368 (5th Cir. 1977).

        The evidence clearly establishes that the defendants used the marks, since they used them under the licensing agreement, and continued to use them after it was terminated. Further, the plaintiff's evidence of interstate solicitation and internet promotion demonstrates that the works were used in commerce and in connection with the sale and advertising of goods.

        The plaintiff correctly states that in this situation the only potentially arguable issue is whether there is a likelihood of confusion (Doc. 13, p. 8). The factors normally considered in evaluating that issue indicate that the plaintiff has a likelihood of success on that point. See Alliance Metals, Inc., of Atlanta v. Hinely Industries, Inc., 222 F.3d 895, 907 (11th Cir. 2000). Thus, the marks are strong; the plaintiff and the defendants are using the same marks; the products are the same; the customers appear to be the same; the sales and advertising methods are similar; and the defendants' intent seems to be to take advantage of the plaintiff's marks.

        Particularly in the absence of any contrary showing, the plaintiff has demonstrated a likelihood of success on the merits. This conclusion is

supported by decisions holding generally that when franchisees or licensees are terminated and continue using the previously authorized trademarks, they are guilty of trademark infringement. See, e.g., Burger King Corp. v. Mason, 710 F.2d 1480, 1492-93 (11th Cir. 1983); Burger King Corp. v. E-Z Eating 8th Corp., 2008 WL 384554 (S.D. Fla. 2008).

### B. Irreparable Injury.

The Eleventh Circuit has said that "a sufficiently strong showing of likelihood of confusion caused by trademark infringement may by itself constitute a showing of irreparable harm." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1310 (11th Cir. 1998). That principle would seemingly support a finding of irreparable harm in this case. But see North American Medical Corp. v. Axiom Worldwide Inc., supra, 522 F.3d at 1227-28.

In all events, the plaintiff's unrefuted evidence that the defendants have held Express out to be an authorized supplier clearly presents a clear threat of irreparable harm to the plaintiff's name and goodwill. Thus, the plaintiff asserts that the use of marks from unauthorized suppliers jeopardizes the quality of their promotional efforts and quality control (Doc. 13, p. 6). Plainly, the defendants' distribution of a product that is associated with the plaintiff without quality control oversight may tarnish the mark and

-10-

the goodwill associated with it. This harm, furthermore, cannot meaningfully be compensated by an award of damages since the extent of the injury would be difficult, if not impossible, to calculate. See Ferrero v. Associated Materials Inc., 923 F.2d 1441, 1449 (11th Cir. 1991).

There is, of course, no countervailing showing by the defendants. Consequently, the plaintiff has sufficiently demonstrated irreparable harm.

C. Balancing of Harm to the Defendants.

As indicated, the defendants have not submitted any opposition memorandum or evidence. Therefore, there is simply nothing to balance against the plaintiff's showing of irreparable harm.

D. The Public Interest.

The fourth factor typically asks if "granting [a] preliminary injunction will disserve the public interest." See, e.g., E. Remy Martin & Co., S.A. v. Shaw-Ross International Imports, Inc., supra, 756 F.2d at 1530 n.13. There is no indication in this case that an injunction would "disserve" the public interest. To the contrary, a preliminary injunction would affirmatively serve the public interest insofar as it prevents consumer confusion and protects the public's expectations that franchisees and consumers who

purchase a particular product will receive the same special characteristics each time. <u>Davidoff & CIE, S.A.</u> v. <u>PLD Int'l Corp.</u>, <u>supra</u>, 263 F.3d at 1304.

IV.

In sum, all four of the traditional factors for preliminary injunctive relief weigh in favor of the issuance of a preliminary injunction. Therefore, I recommend that FSC Franchise Company's Motion for Preliminary Injunction (Doc. 13) be granted and that the defendants be prohibited from using FSC's trademarks.

In accordance with Rule 65(c), F.R.Civ.P., the plaintiff proposes a bond of $5000 (Doc. 13, p. 17). The defendants have made no argument that the security should be greater. Consequently, a bond in that amount appears warranted.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: JUNE 8 , 2009

NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its

-12-

service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. 636(b)(1).