UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FSC FRANCHISE CO., LLC.,

    Plaintiff,

v.                                         CASE NO: 8:09-cv-454-T-23TGW

EXPRESS CORPORATE APPAREL,
LLC, et al.,

    Defendants.
_____/

**O R D E R**

The plaintiff sues (Doc. 1) the defendants Express Corporate Apparel, LLC, ("Express Corporate") and Richard Donahue for trademark infringement, breach of contract, and false designation of origin. The defendants counterclaim (Doc. 16) for trademark infringement and tortious interference with contract and seek a declaration of the parties' rights pursuant to a licensing contract. Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, the plaintiff moves (Doc. 17) to dismiss the counterclaim, and the defendants respond (Doc. 21) in opposition.

Factual Background

The following facts alleged by Express Corporate are presumed true for the purpose of evaluating the plaintiff's motion to dismiss the counterclaim. In 1996, Donahue worked with the founder of the Beef O'Brady's restaurant chain, and Donahue "began to market designs with what later [became] the registered trademark for the food and beverage service operations of the Beef O'Brady's restaurant chain." (Doc. 16,

¶ 44)  Based on a "handshake deal" with the founder, Express Corporate became the exclusive supplier of apparel for the Beef O'Brady's restaurants.  The defendants paid no royalty or licensing fee; "Instead, the Beef O'Brady's chain stocked its souvenir shops with the apparel items marketed by [Express Corporate] and relied upon [Express Corporate] to provide those items for its customers."  (Doc. 16, ¶ 45)  "Throughout the years, [Express Corporate] continued to develop variations of said Marks on clothing items and caps, including the shorthand name for Beef O'Brady's . . . ."  (Doc. 16, ¶ 46)  Express Corporate alleges that the continued exclusive use of the marks on apparel caused Express Corporate "to become associated with such trademarks and such trademarks have acquired a secondary meaning of identification of the [Express Corporate] as the source of such apparel items."  (Doc. 16, ¶ 46)

In February, 2008, the plaintiff and Express Corporate signed a "Supplier Trademark Licensing Agreement."  (Doc. 16, ¶ 48)  Pursuant to the agreement,[1] the plaintiff granted Express Corporate a "royalty free, nonexclusive, nontransferable license to use the Marks in connection with the following goods: <u>uniform, clothing, and retail items</u> . . . ."  (Doc. 1 at 15) (emphasis in original)  By signing the agreement, Express Corporate "acknowledges the ownership of the Marks in [the plaintiff], agrees that it will do nothing inconsistent with such ownership and that all use of the Marks by [Express Corporate] shall inure solely to the benefit of and be on behalf of [the plaintiff]."

---

[1] Although the agreement is attached to the complaint and not to the counterclaim, the counterclaim seeks a declaration of the parties' respective rights under the agreement.  Thus, proper consideration of the plaintiff's motion to dismiss requires consideration of the terms of the agreement (without converting the motion to dismiss into a motion for summary judgment).  See, e.g., Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000).

(Doc. 1 at 15)  Express Corporate "agrees that it will not at any time attack the title of [the plaintiff] to the Marks or attack the validity of this License."  (Doc. 1 at 15-16)  The agreement remains in effect for two years "unless sooner terminated as provided for herein."  Paragraph Eight of the agreement provides that, upon providing thirty days written notice, either party may terminate the agreement with or without cause.  Express Corporate alleges that the plaintiff "has, despite its promise of two years of exclusivity, begun to market clothing items incorporating its food and beverage service trademarks manufactured by competing apparel sources in violation of [Express Corporate's] common law trademark rights."  (Doc. 16, ¶ 49)

### Standard of Review

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(a), Federal Rules of Civil Procedure.  During resolution of a motion to dismiss, allegations in the counterclaim are assumed true and construed favorably to party opposing dismissal.  Beck v. Deloitte & Touche, 144 F.3d 732 (11th Cir. 1998).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  However, neither a conclusory allegation nor "a legal conclusion couched as a factual allegation" supports the sufficiency of a complaint.  Papasan v. Allain, 478 U.S. 265, 286 (1986); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting Twombly, 550 U.S. at 555)).

Discussion

Express Corporate asserts three claims for relief in the counterclaim: "Infringement of Common Law Trademark Rights" (Count 1), "Declaratory Judgment" (Count II), and "Interference with Contract" (Count III).

*"Infringement of Common Law Trademark Rights"*

Count I of the counterclaim purports to state a claim for "infringement of common law trademark rights." Express Corporate alleges that the plaintiff "infringed" Express Corporate's common law trademarks by marketing "clothing items incorporating [the plaintiff's] food and beverage service trademarks manufactured by competing apparel sources." (Doc. 16, ¶ 49) Express Corporate admits that the marks are identical but argues that the plaintiff's "registered trademark rights begin and end with the food and beverage service business and do not extend to clothing and apparel items. Instead, these trademarks as applied to clothing and apparel items have been lucidly the domain of [Express Corporate]." (Doc. 21 at 3) Common sense belies this argument, which contradicts the express terms of the parties' "Supplier Trademark License Agreement."

Pursuant to the licensing agreement, the plaintiff granted Express Corporate "a royalty free, nonexclusive, nontransferable license to use the Marks in connection with . . . uniform, clothing, and retail items." (Doc. 1 at 15) "A licensee's prior claims of any independent rights to a trademark are lost, or merged into the license, when he accepts his position as licensee, thereby acknowledging the licensor owns the marks and that his rights are derived from the licensor and enure to the benefit of the licensor." Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc., 88 F. Supp. 2d 914, 923 (C.D. Ill. 2000); see also Professional Golfer's Ass'n v. Bankers Life & Cas., Co., 514 F.2d 665, 671 (5th Cir.

- 4 -

1975) ("[A] licensee is estopped to contest the validity of the licensor's title during the course of the licensing arrangement.").[2] Upon signing the license, Express Corporate's prior independent use of the Beef O'Brady's marks merged into the license, and Express Corporate acknowledged the plaintiff's ownership of the marks. Accordingly, the plaintiff's motion to dismiss is **GRANTED** as to Count I, and Count I of the counterclaim is **DISMISSED**.

*"Declaratory Judgment"*

In Count II, Express Corporate seeks a declaration interpreting the termination provision of the license and requiring the plaintiff "to honor the common law trademark rights of Express Corporate until at least February 9, 2010." (Doc. 16 at 12). To state a claim for declaratory relief under federal law,[3] the counterclaim must allege the existence of justiciable controversy; the facts must show that "there is a substantial

---

[2] See also 4 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 25:32 (4th ed. 2008) ("Under the merger rule, if: (1) party Alpha uses the mark and later becomes a licensee of Beta under the same mark; and (2) the Alpha-Beta license ends; then (3) Alpha cannot rely upon its prior independent use as a defense against an infringement claim brought against it by Beta. Alpha's prior trademark rights were 'merged' with that of Beta and inured to the benefit of Beta.").

[3] The counterclaim fails to state whether Express Corporate seeks a declaration under 28 U.S.C. § 2201 or under Florida law. Nevertheless, the counterclaim states a claim for declaratory relief under Florida law. To state a claim for declaratory relief under Florida law, Express Corporate must allege:

> that there is a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; that some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; that there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interests are all before the court by proper process or class representation and that the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity. These elements are necessary in order to maintain the statuts of the proceeding as being judicial in nature and therefore within the constitutional powers of the courts.

May v. Holley, 59 So. 2d 636, 639 (Fla. 1952). The counterclaim contains a short, plain statement that the parties possess an "actual, present, adverse and antagonistic" interest in the interpretation of the license.

controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270 (1941).  Favorably construed, the counterclaim alleges the existence of a "substantial difference in the interpretation" of the license.  Specifically, Express Corporate argues that Paragraphs Seven and Eight of the license "are unquestionably repugnant with one another because there is no reasonable interpretation of the contract in which both of these provisions could exist in harmony." (Doc. 21 at 6)  Express Corporate states a claim for a declaration interpreting disputed terms of the parties' license.  Accordingly, the plaintiff's motion to dismiss is **DENIED** as to Count II.

*Interference with Contract*

In Count III, Express Corporate alleges that the plaintiff "undertook a campaign to destroy and interfere" with contractual relationships between Express Corporate and the plaintiff's franchisees.  A claim for tortious interference requires "(1) the existence of an enforceable contract, (2) the defendant's knowledge of that contract, (3) an intentional and unjustified interference by the defendant with the plaintiff's rights under the contract, and (4) resulting damages." Ace Pro Sound and Recording, LLC v. Albertson, 512 F. Supp. 2d 1259, 1268 (S.D. Fla. 2007) (quoting Mariscotti v. Merco Group at Akoya, Inc., 917 So. 2d 890, 892 (Fla. 3d DCA 2005)).

The counterclaim alleges that Express Corporate developed "numerous contractual relationships with franchisees of [the plaintiff] and has provided such related clothing and apparel items to such franchisees."  (Doc. 16, ¶ 62)  Express Corporate alleges that the plaintiff "has affirmatively sen[t] communications to its franchisees in

- 6 -

which it falsely disparages the business and business practices of Express Corporate and [in] which they forbid and threaten injury to the franchisees of [the plaintiff] to prevent such franchisees from purchasing any of Express Corporate's trademark apparel and clothing items." (Doc. 16, ¶ 64)  The counterclaim fails to identify a franchisee with whom the plaintiff interfered.

The plaintiff argues for dismissal of Count III because the plaintiff terminated the licensing agreement (terminating Express Corporate's right to use the marks) and because the plaintiff's conduct was both privileged and justified. (Doc. 17 at 9)  See Ethyl Corp. v Balter, 386 So. 2d 1220, 1225 (Fla. 3d DCA 1980).  Even construed favorably to Express Corporate, the counterclaim alleges that the plaintiff "interfered" only to protect the plaintiff's interest in the marks.  See Morris Commc'ns Corp. v. PGA Tour, Inc., 235 F. Supp. 2d 1269, 1287 (M.D. Fla. 2002); Barco Holdings, LLC v. Terminal Inv. Corp., 967 So.2d 281, 293 (Fla. 3d DCA 2007) ("'There can be no claim for tortious interference with a business relationship where the action complained of is undertaken to safeguard or promote one's financial or economic interest.'" (quoting Genet Co. v. Annheuser-Busch, Inc., 498 So.2d 683, 684 (Fla. 3d DCA 1986); Restatement (Second) of Torts § 769 (2008).  Accordingly, Count III fails to state a claim for tortious interference.  The motion (Doc. 17) to dismiss is **GRANTED** with respect to Count III, and Count III is **DISMISSED**.

## Conclusion

The plaintiff's motion (Doc. 17) to dismiss the counterclaim is **GRANTED IN PART** and **DENIED IN PART**.  Counts I and III of the counterclaim (Doc. 16) are

**DISMISSED**, and the motion to dismiss is otherwise **DENIED**.  On or before October 12, 2009, Express Corporate may amend the counterclaim.

ORDERED in Tampa, Florida, on October 2, 2009.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE